[No. 29818. Department One. · June 20, 1946.]

MYRTLE F. FRUEHAUF, *Respondent,* v. HERMAN P. FRUEHAUF, *Appellant.*[1]

*Cosgrove, Terhune & Schlosstein,* for appellant.

*Simmons & McCann,* for respondent.

MILLARD, J.—Plaintiff commenced this action November 28, 1944, against her husband for separate maintenance. She alleged that defendant had been guilty of cruel treatment of the plaintiff, in that, without justification or provocation, he had left the family home and openly declared to friends and relatives his intention to abandon the plaintiff. By cross-complaint, defendant sought a divorce on the ground of cruelty; he alleged:

"Plaintiff has made the defendant's life burdensome in that for the last seven or eight years she has consistently nagged the defendant, she has on several occasions displayed a violent temper and a number of times has struck the defendant and made several false accusations; that because of plaintiff's violent temper and her consistent nagging he has lost all love and affection for the plaintiff and can no longer live with her as husband and wife or at all."

[1]Reported in 170 P. (2d) 309.

The trial court found that the parties were intermarried July 26, 1913, of which union were born four children, all of whom are now adults. The court further found that defendant was guilty of cruel treatment toward plaintiff without justification and provocation, as alleged in her complaint, and that, by reason of said treatment, the parties have become estranged and cannot longer agreeably live together as husband and wife. Further findings are that no grounds for divorce had been proved and that all of the property of the parties, consisting of defendant's gross income of $450 per month and other assets, was community property.

A decree was entered dismissing defendant's cross-complaint for divorce and awarding separate maintenance to plaintiff. Plaintiff was granted the sole and exclusive right to the use of the family home, together with the household fixtures and furnishings, and defendant was required to pay to plaintiff one hundred dollars monthly for her maintenance, and he was further required to keep up the payments on the family home, including mortgage payments, taxes, and any other lien or encumbrance against the same. Defendant appealed.

Appellant contends that there is no showing in the record that he abandoned the home without cause, or that, having ability to support respondent, he failed and refused to do so; therefore, respondent was not entitled to an award of separate maintenance. Appellant further contends that he had ample and sufficient grounds to leave the family home, hence his departure therefrom was not an abandonment of the wife.

It fairly appears that, during the married life of the parties, for a period of thirty-one years, appellant has not been guilty of any act for which he should be censured by his wife. At most, according to the testimony of respondent, for the past few years appellant's attitude toward his wife has been one of indifference and lack of affection, but respondent has never had occasion to complain that appellant failed to suitably provide for his wife's support. During the last six years of the marriage of the parties, appellant

refused to argue with the respondent, who constantly, without justification, accused him of infidelity. Either three or six years prior to the commencement of this action, when respondent struck appellant with a shoe, the parties have slept in separate beds and discontinued cohabiting with each other. Respondent testified that appellant said he did not want her to sleep with him following the incident when she struck him with a shoe, prior to which time appellant was indifferent, and subsequent to that incident his indifference increased for the reason "that he was getting old apparently . . . The man is getting older. He isn't a young man any more."

She frankly admitted, without any basis other than the statement of a gossiping woman doubtless intent on causing trouble between the parties, that she accused him more than once "of going out with other women," but that she never saw him or, in fact, knew that he had gone out with, other women. She stated she would not permit her husband, to whom she had been married thirty years, to go to lunch with any woman, whether a business associate or a customer. Implicit in her testimony is the fact that he would be required to obtain her consent to take some woman to lunch.

Once or twice during the married life of these parties, appellant attended a meeting of the Society of Automotive Engineers, of which he was a member, and remained away from home until two a. m. Probably a half dozen times he remained out past the hour of 11:30 p. m. On these occasions, it was necessary for him to stay late on his work when he had to teach school, eat dinner downtown, and go to school evenings. On those occasions, respondent would incessantly telephone appellant, doubtless for the purpose of checking his whereabouts. He admitted that once he stayed out all night at a party with fellow workers from his plant, but that he was on the job early the next morning.

Respondent is insanely jealous. She is easily angered and hysterically screeches when nagging appellant and falsely accusing him of infidelity. There is no evidence that there is any other woman in appellant's life. He remained with his wife until the children were married and inde-

pendent, then, being unable to longer endure respondent's cruelty, appellant advised respondent, on or about November 14, 1944, that he intended to leave (and did leave) the family home, and he asked her for a divorce. Both parties interviewed the same attorney soon thereafter. Respondent instituted this action for separate maintenance. Appellant filed a cross-complaint for divorce.

Appellant contends that the trial court erred in granting separate maintenance to respondent and denying cross-complaint for divorce, in view of the fact that the marriage has been completely wrecked, that respondent is not without blame, and a statutory ground for divorce exists.

The statute provides that a divorce may be granted on application of the party injured for "(5) Cruel treatment of either party by the other, or personal indignities rendering life burdensome." Rem. Rev. Stat., § 982 [P.P.C. § 23-1].

■ The constant quarreling over a long period of time, the fact that the parties have not really lived together as husband and wife for a period of from three to five years, and respondent's frequent fits of rage in which she falsely accuses her husband of consorting with other women, constitute cruelty. *Maley v. Maley,* 18 Wn. (2d) 766, 140 P. (2d) 262.

■ The case at bar is not dissimilar on the facts and principle from *Bungay v. Bungay,* 179 Wash. 219, 36 P. (2d) 1058, where we held that it was error to grant separate maintenance and to deny a husband's cross-complaint for a divorce in his wife's action for separate maintenance, where it appears that the marriage has been completely wrecked, that the wife is not without blame, and statutory grounds for divorce exist under Rem. Rev. Stat., § 982. Our language, as follows, in the case cited is apt in the case at bar:

"Taking the whole record from the beginning, and bearing in mind that which the trial court hoped had been forgotten, even though some of the particular events be softened by accepting the wife's version of them, still we cannot hold her free from blame. The whole record, so considered, shows rather convincingly that the wife possessed a nature which

harbored resentment, and that her disposition was to inflict punishment upon her husband for his real or fancied shortcomings. Accordingly, by her course of conduct and in her punitive efforts, she was quite successful in creating statutory cause for divorce under subdivision 5 of Rem. Rev. Stat., § 982 [P. C. § 7501].

"Where, as here, the marriage has been completely wrecked and statutory ground for divorce exists, it seems to us inexpedient upon every ground to hold the parties bound until death releases the bond. Nothing but continued warfare can be expected from such a course, and such a warfare can bring no good to the parties, . . . or to the public."

See, also, *Loeper v. Loeper,* 81 Wash. 454, 142 Pac. 1138.

In *Bungay v. Bungay, supra,* we said that if the wife were the only injured party no court should compel her to accept a divorce against her will, but there, as in the case at bar, the wife did not stand in that position. The wife was not without blame. Her treatment of appellant was such that under the statute appellant was entitled to divorce on the ground of cruelty.

The judgment is reversed and the cause remanded with direction to the trial court to grant a divorce to appellant and to make such disposition of the property as the statute (Rem. Rev. Stat., § 989 [P.P.C. § 23-23]) requires.

STEINERT, SIMPSON, and MALLERY, JJ., concur.