CARRIE W. HOAG *vs.* CHARLES E. HOAG.

Hampden.    September 26, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Husband and Wife.    Marriage and Divorce.    Res Judicata.    Fraud.    Duress. Evidence,* Presumptions and burden of proof.    *Equity Jurisdiction,* To relieve from results of fraud or duress, Laches.    *Estoppel.*

In a suit in equity by a wife against her husband to have declared void a deed which she alleged was procured from her in January of a certain year through fraud, cruelty and duress on his part, it appeared that over a year before she made the deed she had brought a petition against her husband in the Probate Court for separate maintenance, alleging cruelty, which was heard by that court after the April following the date of the deed, and that on appeal by the petitioner from the Probate Court to the Superior Court the petition was dismissed solely on the ground that in the April following the making of the deed the plaintiff and the defendant had become reconciled and had continued to cohabit together until April 15 and that the plaintiff had condoned the cruelty of which she complained in her petition for separate maintenance.   *Held,* that, although the decree on the petition for separate maintenance establishing condonation was conclusive so far as the plaintiff's marital rights at that time were concerned, such condonation did not amount as a matter of law to conclusive proof of a ratification by the wife of the deed which she alleged was procured from her in the preceding January through cruelty and duress, but was to be considered with other evidence on that question.

Condonation in its proper legal sense has reference to marital rights and liabilities as such and to none other.

In a suit in equity by a wife against her husband to have declared void deeds from her to her daughter and from the daughter to the defendant conveying the plaintiff's interest in certain property, on the ground that the plaintiff was caused to execute and deliver the deed to the daughter through fraud and duress of the defendant, the mere fact, that the plaintiff stood by and saw the daughter convey the property to the defendant and made no objection, does not as matter of law estop her from maintaining the suit where it appears that the daughter had no interest in the matter but acted simply as a conduit.

Delay by a wife from January 5 to July 8 in bringing a suit against her husband to have set aside a conveyance of real estate which she alleged the defendant procured from her through fraud and duress, where it appears that the plaintiff lived with her husband until April and that while thus living with him she was under his influence and reasonably entertained fear as to his future conduct, does not as matter of law constitute such laches as to bar the suit.

Where through fraud and duress a husband procures from his wife a conveyance of her interest in certain property through a third person to himself, and he and she thereupon together occupy the property as a home for some months during which he makes certain expenditures "in the ordinary upkeep and care of the property" with no expectation that he would be repaid such expenditures and no request for such repayment, in a suit by the wife

against him to set aside the conveyance, he is not entitled to have any part of such expenditures awarded to him in a final decree which directs the conveyance to be set aside for fraud and duress.

BILL IN EQUITY, filed in the Superior Court on July 8, 1909, by a wife against her husband, seeking to have declared void because procured by fraud, cruelty and duress deeds conveying her interest in certain property, in which she was jointly interested with her husband, to her daughter and from her daughter to her husband.

The case was referred to James L. Doherty, Esquire, as master.

The master's findings with regard to the petitions of the plaintiff for separate maintenance, referred to in the opinion, were as follows:

"Beginning not later than 1907, the marital relations of the parties became more or less strained and on several occasions between October, 1907, and April, 1909, the plaintiff left the defendant, remaining away for short periods of time, and on December 7, 1907, she instituted proceedings against the defendant in the Probate Court for Hampden County for the purpose of securing separate support from him and alleging as a ground therefor: 'that her said husband has been guilty of cruel and abusive treatment of her and especially of threats of physical violence to her on two occasions during the year 1907, the dates of which petitioner cannot exactly specify, and of actual physical violence, in case at their residence in this city, on the following dates: August 30, October 19 and October 20, December 2, 3 and 7 of the year 1907.' A second petition for separate support was brought in the same court by the plaintiff against the defendant, dated May 4, 1909, and based upon substantially the same grounds as those set out in prior suit, the first petition pending at that date. These suits, or at least the prior suit, was tried first in the Probate Court and later, upon appeal, in the Superior Court, and the findings of" both of the courts are described in the opinion, where also are stated other material portions of the master's report.

The case was heard on exceptions to the master's report and on the question of final decree by *Pierce*, J. At the hearing the defendant asked for the following rulings:

1. That any acts of cruelty or coercion which the defendant

committed toward the plaintiff were by her condoned, and by reason of said condonation the plaintiff cannot recover in this action.

2. That the judgment in the former action dismissing the plaintiff's petition was an adjudication in favor of the defendant, and by reason of said judgment the plaintiff cannot recover in this action.

3. That the plaintiff in standing by and seeing her daughter convey the property in controversy to the defendant, and making no objection, ratified said act and said conveyance, and the plaintiff cannot recover in this action.

4. That the plaintiff in waiting from January 5 to July 8, and during said period making no demand for reconveyance of the property in controversy and no attempt to assert her alleged rights, was guilty of laches, and the plaintiff cannot recover in this action.

5. That the defendant is entitled to be repaid by the plaintiff one half of all moneys expended by the defendant for repairs, taxes and all other sums paid by him for protecting and preserving the property in controversy, and until the plaintiff has repaid to the defendant one half of all moneys so expended the plaintiff cannot recover.

6. That the defendant has an equitable lien on the premises in controversy for one half of all moneys expended by him in taxes, repairs and in preserving and protecting said premises, and until said lien is satisfied the plaintiff cannot recover.

7. That upon all the facts as found by the master, the plaintiff is not entitled to a reconveyance to her of her former interest in the property in controversy, nor to a decree in her favor.

8. And that the bill be dismissed.

A final decree was entered granting the prayers of the bill. The defendant appealed.

The case was submitted on briefs.

*D. E. Webster & C. E. Hoag*, for the defendant.

*H. T. Richardson*, for the plaintiff.

HAMMOND, J. The bill alleges in substance that the defendant and the plaintiff as husband and wife were joint tenants of certain real estate therein described, towards the purchase price of which the plaintiff contributed from her own money about

$3,500, being more than one half of the whole price, that by reason of threats of bodily injury, and by fraud and duress practised upon her by the defendant, she was induced against her own will to convey all her interest in the property to him through a third person; and the prayer of the bill is that the deeds of conveyance be cancelled and the property be reconveyed to her.

The pleadings were completed and the case referred to a master, and, after an interlocutory decree overruling the defendant's exceptions to the master's report and confirming the report, there was a final decree for the plaintiff from which final decree the defendant appealed; and the case is before us upon this appeal.

It appears that at the hearing before the Superior Court upon the merits the defendant asked for certain rulings which evidently were not adopted by the court. Although the case is before us upon appeal from the final decree and not upon exceptions to the refusal to give these rulings, yet inasmuch as the propositions laid down in the rulings requested may be said fairly to be involved in the consideration of the appeal and furthermore to embody the only ground of the objections which the defendant in his brief makes to the decree, we shall follow the brief of the defendant and shall consider only the accuracy of the propositions upon which in his brief he relies.

It appears from the master's report that the plaintiff had brought in the Probate Court two petitions against the defendant for separate maintenance, each alleging as a ground therefor cruel and abusive treatment on his part; that "at least the prior suit" was heard and dismissed by the court solely upon the ground that inasmuch as on April 10, 1909, she and her husband became reconciled and continued to cohabit together as husband and wife from that time until the fifteenth day of the same month, she had thereby condoned the cruelty of which she complained. And on her appeal to the Superior Court the same result was reached for the same reason. It is urged by the defendant that the dismissal of the petition on the ground of condonation is as matter of law absolutely conclusive against the plaintiff in the present suit.

The deeds in question were executed in January, 1909. There can be no doubt that so far as respects the acts of cruelty before

April 10, 1909, whether or not they be all alleged in the petition, including those now relied upon to defeat these conveyances, the decree dismissing the plaintiff's petition for a separate maintenance is conclusive against her so far as her matrimonial rights are concerned. *Corbett* v. *Craven*, 193 Mass. 30, and cases cited. *Bassett* v. *Connecticut River Railroad*, 150 Mass. 178, and cases cited. But condonation in its proper legal sense has reference only to marital rights and liabilities as such and to none other. And while acts which amount to condonation of marital wrongs as such may be evidence of ratification of an act done under duress, or waiver of a fraud leading to the act, they are not necessarily conclusive in a case like the present. The question is not whether there has been condonation, but whether the act which the plaintiff seeks to have declared void has been in any way ratified by her. If it has been, then she must stand by it, and, if it has not been, then unless barred by estoppel or laches she may avoid it. And that is so whether or not she has condoned, so far as respects her marital rights, the violence by means of which she was led to the act. It is therefore manifest that the propositions contained in the first and second rulings requested by the defendant are not sound. Whether there had been ratification was a question, not of law but of fact; and in view of the disturbed condition of the mind of the plaintiff caused in part at least by the cruelty of the defendant, and of their past relations and the chances as to whether he would renew his acts of cruelty, the general uncertainty of his future conduct and the fact that she was living with him much of the time between the date of the conveyance and the filing of this bill, the court as the trier of fact may well have come to the conclusion that she neither in thought, word, or deed ever had ratified these conveyances. We see no error in such a finding.

There is nothing in the proposition contained in the third request that the plaintiff " in standing by and seeing her daughter convey the property in issue to the defendant and making no objections is estopped from ever afterwards complaining of the act." The daughter had no interest in the matter. She acted simply as the conduit through which the title passed from the plaintiff to the defendant. It is plain that as against the defendant there was no estoppel.

Nor has the plaintiff been guilty of laches.  The deeds were executed on January 5, 1909.  This bill was filed on July 8, 1909. During half of this time she was living with her husband and presumably to a greater or less extent under his influence.  Her petition for separate maintenance was not dismissed by the Probate Court until after April 15, 1909.  In view of these facts and of the nature of her life with her husband in the past together with the fear she reasonably may have entertained as to his future conduct, she may well have hesitated to act without proper deliberation as to the time.  And the court considering all the circumstances may properly have concluded that she acted without undue delay, especially when the defendant does not seem to have been prejudiced thereby.

The defendant is not shown to be entitled to recover any sums expended by him.  The master has found that these expenditures "were [made] in the ordinary upkeep and care of the property during a period of time when the same was occupied by the plaintiff and defendant as a home and with no expectation on the part of the defendant that he would be repaid such expenditure, and no request for such repayment in part was ever made upon the plaintiff by defendant prior to this suit."

*Decree affirmed.*